|    |    |    |
|----|----|----|
| 1  |    |    |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | ) | CR 12-2518-TUC-RCC |
|---|---|---|
|  Plaintiff, | ) | **ORDER** |
| vs. | ) |  |
| AURORA MARTINEZ, | ) |  |
|  Defendant. | ) |  |
|  | ) |  |

This Court held oral argument with regard to the Government's objection to Magistrate Judge's Report and Recommendation that the Motion to Suppress be granted. At issue is whether or not the defendant in this case voluntarily consented to a search of her house.

The parties are quite familiar with the facts, but to summarize, detectives of the Nation arrested an individual who said that, while they had received marijuana from a particular place, they knew where there was marijuana in another place and supposedly gave the location of Ms. Martinez's residence.

After receiving this information in a map drawn by this individual, detectives went to the area to locate the house. They believed they located the house and approached in at approximately 2:45 in the morning with the expresse intent to do a knock- and -talk.

Whether Ms. Martinez heard the knock on the door or not, she opened the door and

found at her door Detective Elkdreamer, all 6'2" 290 pounds of him.  At the time the defendant was 18 years of age.  A ruse was used to say that they were checking out a noise complaint and the Officers wanted to come in and check..  They were told no.  The officer then stated that he smelled marijuana, to which defendant said she and another individual had been smoking marijuana here in this area earlier, and that is probably what they smelled.  Once again, the answer to coming in was no.  At that point and time, in the words of Detective Elkdreamer, here is what happened:

**A. No, it did not appear so.**

**Q. And so describe the conversation you had with Ms. Martinez at that point.**

**A. At that point, like I said, after I identified myself, I asked her to identify herself to me, and she identified herself as Aurora Martinez. I explained to her the reason why we were there. Like I said before, the noise complaint was used. Asked her if she had heard anything or anything had happened at her residence.  At that time Ms. Martinez stated that a drunken female had arrived at her residence earlier in the evening and was causing a loud noise and trying to argue with her.**

**She then -- I believe the female then had left her residence, and then during that time I asked Martinez if everything was okay. She said yes. I asked her if she'd mind if we can search her residence to make sure everything was okay. At that time Ms. Martinez stated "Yes, I do mind."**

**During the time I was standing there talking to her, I smelled the overwhelming odor of raw marijuana coming from inside her house.  I asked Ms. Martinez if anybody else was inside the residence besides her, and she stated it was her and her son. Because of the odor of marijuana, I asked -- oh, I told -- I'm sorry. I told Martinez that I smelled the odor of marijuana coming from her residence.**

**At that time Ms. Martinez stated that she was smoking marijuana earlier with her friend, and that's probably what I smelled. Martinez stated that she was smoking right where I was standing, which was at the entrance to**

1 the residence.

3 Q. Are you trying to detect the difference in smell between
4 raw marijuana and burnt marijuana?
5 A. Yes, I am.
6 Q. All right. Continue. How did the conversation progress from that point?
7 A. From that time, I asked Ms. Martinez again if I can search her residence
8 for anything illegal. At that time -- or if she'd mind if I search her residence
9 for anything illegal. At that time Ms. Martinez said, "Yes, I do mind." At that
10 time I explained to Ms. Martinez the totality of the circumstances and what I
11 observed and what I smelled and that her story was not matching up with
12 what I smelled and observed. And I then asked -- I then told Ms. Martinez
13 again that this can go one of two ways. The first way is that she either wait
14 with us while we apply for a search warrant, or the second way is that she tells
what's going on or what's happening right now.
15 Q. And how did she respond to that?
16 A. At that time I then asked her permission again if we had consent to search
17 her residence, and at that time she said go ahead.
18 Q. And did you notice any change in her demeanor after she
19 answered go ahead?
20 A. Ms. Martinez finally -- <u>It felt like she gave in, she was relieved, and -- and
21 it's just I felt like she was relieved.</u>
22 I'm sorry.
23 There are several factors that the Court should consider when determining whether
24 or not the consent given at this time was voluntary.
25 1). The defendant was not under arrest.
26 2). The defendant was awakened at 2:45 a.m., when this occurred.
27 3). The defendant was 18 years of age, obviously sleeping
28 4). The defendant was not advised of her Miranda rights, that she could refuse to

- 3 -

1  consent
2  5). She was advised that a warrant could be sought;
3  6). The officers could not have gotten a warrant to search the premises before their
4  arrival at 2:45 a.m.   The Court specifically notes daytime warrants and nighttime
5  warrants.  They would have gotten neither.
6          The court is supposed to look at the totality of the circumstances and believe
7  that at almost three o'clock in the morning, after having previously said no on two
8  occasions, that the third time after being threatened with being held while a warrant
9  was sought or to tell them what was going on that the next breath out of her was
10 consensual and not under pressure or duress.
11 This Court finds that decision troubling to make.  Under the circumstances, the
12 consent given was not voluntary.  Knock- and- talk has to have some rational
13 limits. Going in at 2:45 in the morning , at the very least, is outside that bounds.
14    Second, after being told on two prior occasions that they cannot come in,  how
15 many times can the officer ask?  Was the third time supposed to be the last?  She
16 had no idea.  (Coincidentally, the Agent testified he knew it would be the last
17 request).  All she knows is that she was threatened with a warrant and being held
18 while one was being obtained.  This is not a situation that produces uncoerced
   consent.
19 **IT IS ORDERED ADOPTING**  the Magistrate Judge's  Report and
20  Recommendation (Doc. 42).
21 **IT IS FURTHER ORDERED GRANTING** Defendant Aurora Martinez's
22  Motion to Suppress (Doc. 23).
23         DATED this 13th day of March, 2013.
24
25
26  _____
        Raner C. Collins
        United States District Judge
27
28